

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TONY PRESTON and
ALETHEA PRESTON,

And All Others Similarly Situated,

    Plaintiffs,

vs.

MORTGAGE GUARANTY INSURANCE
CORPORATION OF MILWAUKEE, and
FLAGSTAR BANK, FSB,

    Defendants.
_____/

CASE NO. 6:03-cv-370-ORL-31 JGG

CLASS REPRESENTATION

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs TONY PRESTON and ALETHEA PRESTON, sue Defendants MORTGAGE GUARANTY INSURANCE CORPORATION OF MILWAUKEE (hereinafter "MGIC"), and FLAGSTAR BANK, FSB (hereinafter "Flagstar") and allege:

1.     This is a class action brought pursuant to Rule 23, Federal Rules of Civil Procedure.

2.     Plaintiffs, husband and wife, are residents of Clermont, Florida, and all of the transactions alleged herein occurred in the Middle District of Florida.

3.     Defendant MGIC is a corporation which issues private mortgage insurance policies throughout the Middle District of Florida, the state of Florida, and the nation. Defendant MGIC is based in Milwaukee, Wisconsin, and is one of the nation's leading private mortgage insurers, with $19 billion in insurance-in-force, covering 1.6 million home loans.

SCANNED

1

4. Defendant Flagstar is a federally chartered stock savings bank, incorporated in Michigan. Defendant Flagstar specializes in the origination and acquisition of residential mortgage loans. In 2001, Flagstar originated or acquired over $3.3 billion in mortgage loans.

5. Plaintiffs seek damages in excess of $15,000, but less than $75,000, inclusive of all costs, and seek damages for class members as more specifically identified below in amounts less than $75,000 per class member.

6. This court has jurisdiction to consider claims brought pursuant to the FCRA, including class actions to enforce its provisions. 15 U.S.C. § 1681p.

## THE FAIR CREDIT REPORTING ACT

7. The Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 - 1681t, is a federal statute first enacted in 1971. The FCRA is a consumer protection statute that regulates the activities of credit reporting agencies and users of credit reports, and provides certain rights to consumers affected by use of their credit reports. As a consumer protection statute, the provisions of the FCRA are to be liberally construed in favor of the consumer.

8. In 1996, the FCRA was further amended to expand the rights of consumers who are adversely affected by use of their credit reports.

9. The FCRA provides that consumer reporting agencies may provide consumer reports to persons who intend to use the information in connection with insurance transactions, including underwriting of insurance policies, involving a consumer. 15 U.S.C. § 1681b(a)(3)(C).

10. The term "consumer report" means any written, oral, or other communication of *any information* by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living

which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes. Consumer reports include credit reports and credit scores obtained from credit reports. 15 U.S.C. § 1681a(d).

11. The FCRA provides that if the user of a consumer report takes any adverse action with respect to a consumer based in whole or in part on any information contained in the consumer report, the user of the report must provided notice to the consumer of the adverse action, together with the identity of the consumer agency providing the consumer report and other specific information. 15 U.S.C. § 1681m.

12. The FCRA adverse notice provisions are meant to provide consumers warning that their consumer reports have been used adversely to their interests, in order to provide such consumers with an opportunity to review their reports and determine whether mistakes in their consumer reports might have contributed to such adverse action. Where adverse notice is not provided, the consumer is left without this important legislative protection from errors in such reports. Additionally, by not providing contemporaneous notice to the consumer, the user of the report makes it difficult, if not impossible, to determine at a later date what potentially erroneous information might have been contained in the consumer report, which information changes on a daily basis.

13. The FCRA provides for civil remedies to consumers for violations of the act, including damages, punitive damages, costs and attorneys fees. 15 U.S.C. § 1681n.

## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

### Fla. Stat. §§ 501.201 to 501.213

14. The Florida Legislature created the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) to simplify, clarify and modernize the law governing consumer protection; to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts in the conduct of any trade or commerce; and to make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection. Fla. Stat. § 501.202.

15. A violation of FDUTPA may be based on the violation of federal consumer protection statutes. Fla. Stat. § 501.203(3).

16. Defendants' FCRA violations violate FDUTPA.

17. Defendants' secret use of consumer's private information found in consumer reports to make decisions adverse to the interests of consumers is an unfair, deceptive and unconscionable trade practice that violates FDUTPA.

18. Defendants' failure to provide consumers with contemporaneous notice of the use of private consumer reporting information when the information is used to penalize the consumer or provide the consumer with other than the most favorable coverage at the most favorable rate and with the most favorable conditions is an unfair, deceptive and unconscionable trade practice that violates FDUTPA.

19. Defendants' refusal to assist consumers in locating or identifying the reasons for Defendants' adverse decision is an unfair, deceptive and unconscionable trade practice that violates FDUTPA.

20. Defendants' refusal to provide information to consumers about the origin of the "derogatory" information it used as a justification for providing the consumer less than the most favorable rate and conditions, even upon inquiry by consumers is an unfair, deceptive and unconscionable trade practice that violates FDUTPA.

21. The above described uniform practices and procedures aggrieved and injured Plaintiffs and the members of Class B.

22. FDUTPA creates civil liability for those that violate the Act without regard to any other remedy or relief to which a person is entitled and provides for actual damages, declaratory and injunctive relief, costs and attorneys fees. Fla. Stat. §§ 501.211 and 501.2105.

### INDIVIDUAL FACTUAL ALLEGATIONS

23. In December, 2002, Plaintiffs began looking for a mortgage on their home under construction in Clermont, Florida, through a mortgage broker, All Fund Inc.

24. Defendant Flagstar investigated the possibility of providing a mortgage to Plaintiffs in January, 2003. Due to the amount and percentage of financing being sought by Plaintiffs, Flagstar determined that if it were to provide or acquire the mortgage for Plaintiffs, private mortgage insurance would be required in the transaction. Flagstar obtained credit information on Plaintiffs from Trans Union, a consumer reporting agency, in January, 2003.

25. On the settlement date for the real estate transaction, Plaintiffs were informed that in order to finance the transaction, Flagstar required Plaintiffs to pay for a private mortgage insurance policy to protect Flagstar in case of default. Flagstar had arranged with Defendant MGIC to provide it such private mortgage insurance, and had advised Defendant MGIC as to the credit report or credit score obtained by Flagstar regrading Plaintiffs. Based in whole or in part on the consumer reporting

information provided to it, Defendant MGIC charged Flagstar a monthly premium of $762.29 for such private mortgage insurance, which amount Plaintiffs were required by Flagstar to pay in order to obtain the mortgage from Flagstar.

26.  MGIC knew that as a matter of practice and procedure, Flagstar would pass the cost of the mortgage insurance directly to Plaintiffs.

27.  Plaintiffs were not advised, however, that the amount of the high premiums for private mortgage insurance they were required to pay was based in whole or in part on their credit report obtained by Flagstar and provided to MGIC. Plaintiffs were given no further information regarding this adverse action, including the name, address and telephone number of the consumer agency from whom the consumer report was obtained, and their rights under the Fair Credit Reporting Act to obtain a copy, dispute any entries therein, and correct mistakes in their report.

28.  MGIC's underwriting procedures uniformly used consumer report information provided to it by lenders in determining whether lenders would receive private mortgage insurance from MGIC and at what rate. These procedures were uniformly engaged in by the electronic underwriting systems of MGIC and Flagstar, rather than through individual decisions by human underwriters.

29.  These uniform electronic underwriting procedures are used by MGIC throughout the United States. Further, MGIC knows that the lenders to whom it provides private mortgage insurance will in fact pass on the premiums for such insurance to the consumers who have applied for a mortgage.

30.  By taking adverse action against Plaintiffs in charging them a higher premium for private mortgage insurance based in whole or in part upon information in a consumer report,

defendants were users of consumer reports and took adverse action against Plaintiffs as defined in the FCRA.

31. Plaintiffs subsequently determined on their own that Trans Union, a consumer reporting agency, had in fact provided their private consumer report to Flagstar in connection with Flagstar's provision of a mortgage and the underwriting of the private mortgage insurance policy by MGIC. MGIC was aware that its premiums were being set based on information in the credit report of Plaintiffs obtained by Flagstar and provided to MGIC.

32. Defendants MGIC and Flagstar failed to provide Plaintiffs with any notification, oral, written or electronic, advising Plaintiffs of the adverse action, the identity of the consumer reporting agency providing the consumer report, or their rights to obtain a free copy of their consumer report in order to determine whether mistakes in their consumer report might have contributed to the adverse action, nor did MGIC or Flagstar comply with the requirements of 15 U.S.C. § 1681m.

33. Upon information and belief, it is alleged that Defendants do not as a matter of practice and procedure provide any notice to applicants and recipients of residential mortgages that the information obtained from a consumer report has been used in determining the premiums charged by MGIC for private mortgage insurance and passed through by Flagstar to the applicants for mortgage loans, nor are applicants told the identity of the furnisher of the consumer report, nor any of their rights under the FCRA as required by law.

### CLASS REPRESENTATION ALLEGATIONS

34. Plaintiffs seek to represent a class and subclass of victims against Defendants MGIC and Flagstar as follows:

A. "Class A":

All applicants or mortgagors throughout the United States who have applied for a mortgage through any bank or mortgagee, who were required to pay for private mortgage insurance obtained by the bank or mortgagee from MGIC, and who, based in whole or in part upon information contained in a consumer report on the insured or applicant obtained by defendants, were required to pay for such private mortgage insurance policy from MGIC at less than the best available rate, and who received no contemporaneous notice from defendants of such adverse action, including the information necessary under the Fair Credit Reporting Act, 15 U.S.C. § 1681m.

B. "Class B":

All applicants or mortgagors throughout the United States who have applied for a mortgage through Flagstar Bank, or whose mortgages were assigned to or acquired by Flagstar Bank, who were required to pay for private mortgage insurance obtained by Flagstar Bank from MGIC, and who, based in whole or in part upon information contained in a consumer report on the insured or applicant obtained by defendants, were required to pay for such private mortgage insurance policy at less than the best available rate, and who received no contemporaneous notice from defendants of such adverse action, including the information necessary under the Fair Credit Reporting Act, 15 U.S.C. § 1681m.

"Class C":

All applicants or mortgagors throughout the State of Florida who have applied for a mortgage through any bank or mortgagee, who were required to pay for private mortgage insurance obtained by the bank or mortgagee from MGIC, and who, based in whole or in part upon information contained in a consumer report on the insured or applicant obtained by defendants, were required to pay for such private mortgage insurance policy from MGIC at less than the best available rate, and who received no contemporaneous notice from defendants of such adverse action, including the information necessary under the Fair Credit Reporting Act, 15 U.S.C. § 1681m.

To be excluded from the Classes are all persons who have claims in excess of $75,000.00. Also to be excluded from the Classes are persons employed by or otherwise related to Flagstar, MGIC, or their subsidiaries, their successors, or affiliates. Also to be excluded from the Classes are any and all members of the federal judiciary.

## Rule 23 Allegations

35. Pursuant to Rule 23, this action may be maintained as a class action because all procedural elements are satisfied, as set forth below:

### 1. Numerosity

36. Defendant Flagstar is a major owner of residential mortgage loans throughout the United States, and holds thousands of mortgages in which customers are paying for private mortgage insurance obtained by Flagstar from MGIC. The number of consumers nationwide with respect to whom the Defendants took an adverse action under the FCRA and failed to provide the information and notices required under the FCRA is in excess of several thousands. The exact number and identity of Members of each Class is unknown to Plaintiffs but can easily be determined from the records of the Defendants.

37. The Classes are so numerous that it would be impractical to join all of the members of the Classes within the meaning of Rule 23(a)(1).

### 2. Commonality

38. On behalf of the Classes, the representative Plaintiffs bring claims which raise questions of law and fact common to all members of each Class, as contemplated by Rule 23(a)(2). Common issues include:

> (a)   Whether the Defendants violated the FCRA when they took adverse actions against applicants or mortgagors based in whole or in part on information contained in consumer reports, failed to properly advise the applicants or mortgagors that adverse actions had been taken against them, and failed to properly provide the applicants and mortgagors with the information and notices required under the FCRA;

(b) Whether the Defendants violated the FCRA when they took adverse actions against applicants or mortgagors based in whole or in part on information contained in consumer reports without providing the notices required under the FCRA;

(c) Whether oral notifications to customers of adverse action, only after inquiries initiated by the applicant or mortgagor as to the reason for adverse actions, were sufficient notices as required by the FCRA;

(d) Whether MGIC is a user of consumer reports when it charges premiums based upon credit scores obtained by Flagstar or other banks or mortgagees on applicants for mortgages and provided to MGIC;

(e) Whether the actions of the Defendants in failing to provide adequate notice as required by the FCRA were willful;

(f) Whether the actions of the Defendants in failing to provide adequate notice as required by the FCRA were done in reckless disregard of the consumers' rights;

(g) Whether the actions of the Defendants in failing to provide adequate notice as required by the FCRA were done in conscious disregard of the consumers' rights;

(h) Whether members of the Class are entitled to recover damages as a result of the actions of the Defendants in violating the notice requirements of the FCRA;

(I) Whether Defendants' secret use of consumer's private information found in consumer reports to make decisions adverse to the interests of consumers violates FDUTPA;

(j) Whether Defendants' failure to provide consumers with contemporaneous notice of the use of private consumer reporting information when the information is used to penalize the consumer or provide the consumer with other than the most favorable coverage at the most favorable rate and with the most favorable conditions is an unfair, deceptive and unconscionable trade practice that violates FDUTPA;

(k) Whether Defendants' refusal to assist consumers in locating or identifying the reasons for Defendants' adverse decision is an unfair, deceptive and unconscionable trade practice that violates FDUTPA;

(l) Whether Defendants' refusal to provide information to consumers about the origin of the "derogatory" information it used as a justification for providing the consumer less than the most favorable rate and conditions, even upon inquiry by consumers is an unfair, deceptive and unconscionable trade practice that violates FDUTPA; and

(m) Whether Plaintiffs and Members of Class C are entitled to injunctive and declaratory relief under FDUTPA.

### 3. Typicality

39. In accordance with the requirements of Rule 23(a)(3), the representative Plaintiffs' claims are typical of the claims of all other members of each Class, and the representative Plaintiffs have no interests which are adverse or antagonistic to the interests of the Classes. The representative Plaintiffs' claims are typical of the claims of each Class because all such claims arise from a series of identical business practices, or a common course of conduct, involving the failure of the Defendants to notify consumers that adverse actions had been taken against them, and of their failure to provide other required information to consumers, in violation of the FCRA and FDUTPA.

### 4. Adequacy

40. In accordance with the requirements of Rule 23(a)(4), the representative Plaintiffs and their counsel will fairly and adequately represent and protect the interests of each member of each Class. The representative Plaintiffs and the Classes share common interests, and the representative Plaintiffs are committed to the vigorous prosecution of this action and has retained competent counsel experienced in class action litigation.

### Rule 23(b)(3) Allegations

41. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Class members will continue to suffer damages, and will continue to be harmed by the failure of Defendants to provide adverse notice as required by law. The violations of law by the Defendants will proceed without remedy while the

Defendants continue to ignore their legal obligations under the law, and consumers will be left unaware of the violation of their rights on a daily basis.

42.     Most individual Class members have little ability to prosecute an individual action due to the complexity of the issues involved in this litigation, the significant costs attendant to litigation on this scale, and the comparatively small, although significant, damages suffered by individual Class members.

43.     This action will result in an orderly and expeditious administration of Class claims. Economies of time, effort, and expense will be fostered and uniformity of decisions will be insured.

44.     This action presents no difficulty that would impede its management by the Court as a class action. When the liability of Defendants has been adjudicated, the damages of each Class Member can be administratively determined. In addition, a willful violation of the law may be remedied by the Court through imposition of statutory damages based upon each violation of the FCRA. A class action is superior to other available methods for the fair and efficient adjudication of each class member's claim.

45.     The questions of fact common to the claims of each member of each Class, relating to the uniform failure to provide notice to applicants and insureds by Defendants, predominate over any facts affecting only individual members of the Classes. Individual reliance is not a requirement to establish liability under the FCRA or FDUTPA.

46.     The questions of law common to the claims of each member of each Class, relating to the adequacy of any notice provided to applicants or insureds by the Defendants, or the complete lack of any notification by them, predominate over any questions of law affecting only individual members of the Classes.

## COUNT ONE - WILLFUL VIOLATION OF FCRA

47. Plaintiffs reallege and incorporate herein the allegations of paragraphs 1 to 46.

48. Defendant Flagstar has instituted a corporate policy of checking into the credit status of applicants for mortgages on a regular basis, for the purpose of determining whether applicants will be provided a mortgage, and whether the applicants will be required to pay for private mortgage insurance.

49. Defendant MGIC has instituted a corporate policy of setting premiums for private mortgage insurance to be issued to Flagstar and other mortgagees based upon credit reports or credit scores obtained by Flagstar and other mortgagees concerning the applicants for mortgages.

50. When the Defendants determine for themselves that information contained in the consumer report of an applicant is derogatory for any reason, or that information contained in a consumer report of an applicant results in a credit score that is less than desirable for any reason, Defendants have instituted a corporate policy of charging a higher premium for private mortgage insurance.

51. Defendants took adverse action against Plaintiffs based in whole or in part on information in consumer reports without providing contemporaneous notice of the adverse action.

52. In taking adverse action based in whole or in part upon credit information of applicants and insureds, including Plaintiffs, the Defendants have willfully ignored the requirements of the FCRA, and have made a corporate decision to provide inadequate notice to such applicants of such adverse actions. Instead, the Defendants have willfully chosen to attempt to place upon such applicants and insureds the burden of finding out whether adverse action has been taken, by whom, and the extent of their rights under the Fair Credit Reporting Act.

53. Defendants failed to create or implement reasonable procedures to ensure compliance with the FCRA.

54. The actions of the Defendants constitute willful noncompliance with the requirements of the FCRA. 15 U.S.C. § 1681n(a).

55. Plaintiffs and class members have suffered damages as a result of Defendants' willful violation of the FCRA, including costs and their attorneys' fees herein.

### COUNT TWO - NEGLIGENT VIOLATION OF FCRA

56. Plaintiffs reallege and incorporate herein the allegations of paragraphs 1 to 46.

57. Defendants took adverse action against Plaintiffs based in whole or in part on information in consumer reports without providing contemporaneous notice of the adverse action.

58. In failing to provide notice to applicants when they use a consumer report to charge higher premiums for private mortgage insurance, the Defendants have been negligent in failing to comply with the requirements imposed by the FCRA.

59. Defendants failed to create or implement reasonable procedures to ensure compliance with the FCRA.

60. The actions of the Defendants constitute negligent noncompliance with the requirements of the FCRA. 15 U.S.C. § 1681o.

61. Plaintiffs and class members have suffered damages as a result of Defendants' negligent violation of the FCRA, including costs and their attorneys' fees herein.

### COUNT THREE - VIOLATION OF FDUTPA AS TO CLASS C ONLY

62. Plaintiffs re-allege and incorporate paragraphs 1 to 61.

63. This is an action for declaratory and injunctive relief for violations of the Florida Deceptive and Unfair Trade Practices Act.

64. Plaintiffs and members of Class C are consumers and interested parties within the meaning of § 501.203 of FDUTPA.

65. Defendants are engaging in trade or commerce within the meaning of § 501.203 of FDUTPA.

66. Defendants used unfair and unconscionable acts or practices and deceptive acts or practices in failing to provide adequate adverse action notice as required by the FCRA.

67. Defendants' secret use of consumer's private information found in consumer reports to make decisions adverse to the interests of consumers is an unfair, deceptive and unconscionable trade practice that violates FDUTPA.

68. Defendants' failure provide consumers with contemporaneous notice of the use of private consumer reporting information when the information is used to penalize the consumer or provide the consumer with other than the most favorable services at the most favorable rate and with the most favorable conditions is an unfair, deceptive and unconscionable trade practice that violates FDUTPA.

69. Defendants' refusal to assist consumers in locating or identifying the reasons for Defendants' adverse decision is an unfair, deceptive and unconscionable trade practice that violates FDUTPA.

70. Defendants' refusal to provide information to consumers about the origin of the "derogatory" information it used a justification for providing the consumer less than the most

favorable service, rate and conditions, even upon inquiry by consumers is an unfair, deceptive and unconscionable trade practice that violates FDUTPA.

71. The above described uniform practices and procedures aggrieved and injured Plaintiffs and the members of Class C, violate public policy and constitute unfair, unconscionable and deceptive acts within the meaning of Florida Statute § 501.204 and Plaintiffs and the members of Class C are aggrieved and entitled to declaratory and injunctive relief pursuant to § 501.211(1).

### COUNT FOUR - DECLARATORY RELIEF

72. Plaintiffs re-allege and incorporate herein the allegations of paragraphs 1 to 61.

73. Pursuant to 28 U.S.C. § 2201, Plaintiffs ask the Court to declare the rights of the parties herein regarding Defendants' obligation to provide adequate notice of adverse action as required by the FCRA.

### COUNT FIVE - INJUNCTIVE RELIEF

74. Plaintiff realleges and incorporates herein the allegations of paragraphs 1 to 61.

75. The Defendants continue to violate the rights of applicants and insureds in failing to provide notice of adverse action under the FCRA as outlined herein, and if not enjoined from such violations by the Court, the Defendants will continue to engage in conduct which disregards the rights of consumers.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, demands judgment against Mortgage Guaranty Insurance Corporation of Milwaukee and Flagstar Bank, FSB, as follows:

(a) Certify this action as a class action and designate Plaintiffs as the representatives thereof and Plaintiffs' counsel as Class counsel;

(b) Award Plaintiffs and members of Class A and Class B either (I) the actual damages sustained by such Plaintiffs or members of the Classes as a result of the Defendants' willful failure to comply with the FCRA, or (ii) damages of not less than $100 and not more than $1,000 for each separate violation;

(c) Award Plaintiffs and members of Class A and Class B the actual damages sustained by them as a result of the Defendants' negligent failure to comply with the FCRA;

(d) Enter an order enjoining Defendants from continuing to violate the FCRA as described herein;

(e) Enter an order declaring the parties rights and obligations under the FCRA;

(f) Enter an order enjoining Defendants from continuing to violate the FDUTPA as described herein;

(g) Enter an order declaring the parties rights and obligations under the FDUTPA;

(h) Award Plaintiffs reasonable attorneys' fees, prejudgment interest, and the costs and expenses incurred in this action, including experts' fees; and

(g) Grant such other relief as may be appropriate under the circumstances.

## Trial by Jury

Plaintiffs demand trial by jury of all issues so triable in this action.

JAMES, HOYER, NEWCOMER &
SMILJANICH, P.A.

_____
Terry A. Smiljanich
Florida Bar No. 145359
W. Christian Hoyer
Florida Bar No.: 162703
Kathleen Clark Ford
Florida Bar No.: 047120
4830 W. Kennedy Blvd., Suite 550
Tampa, FL 33609
Telephone: (813) 286-4100
Facsimile: (813) 286-4174

BEUSSEE, BROWNLEE, BOWDOIN,
WOLTER, P.A.
Douglas Bowdoin
390 N. Orange Avenue, Suite 2500
Orlando, FL 32801
Telephone: (407) 926-7700